IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 17-cv-02022-MSK-KLM

**CRAIG S. ROBLEDO-VALDEZ,**

  Plaintiff,

v.

**ARAMARK CORRECTIONAL SERVICES, LLC,
JOSHUA LANG,
JUDY MIDDLEWEEK,
MATTHEW,
MIKE FISH, and
SUSAN SWERDFERGER,**

  Defendants.[1]

_____

**OPINION AND ORDER GRANTING MOTIONS TO DISMISS AND MOTION FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to Defendants Mr. Lang, Ms. Middleweek, and Ms. Swedferger's (collectively, the "Food Service Defendants") Motion to Dismiss **(# 49)**, and Mr. Robledo-Valdez's response **(# 51)**; Defendant Mike Fish's Motion to Dismiss **(# 55)**, Mr. Robledo-Valdez's response **(# 59)**, and Mr. Fish's reply **(# 60)**; and Defendant Aramark Correctional Services, LLC's ("Aramark") Motion for Summary Judgment **(# 66)**, Mr. Robledo-Valdez's response **(# 70)**, and Aramark's reply **(# 73)**.

---

[1]   The Court has *sua sponte* amended the caption to provide known last names for many of the Defendants.

1

## FACTS

According to Mr. Robledo-Valdez's *pro se*[2] Amended Complaint **(# 7)**, he is an inmate in the custody of the Colorado Department of Corrections. Between April 2015 and October 2016, Mr. Robledo-Valdez was housed at the Jefferson County Jail ("the Jail"). There, Mr. Robldeo-Valdez was prescribed a special "Gastrtic Soft/No peas" diet, which prohibits Mr. Robledo-Valdez from being served particular foods and requires that he be served others.

Mr. Robldeo-Valdez contends that "at least 4 times per week," Jail staff would "forget or neglect to send certain parts of my meal up to my floor"; that "5 times they did not send ANY food/meal at all," forcing him to go without a meal on those dates; that 12 times, he was sent prohibited foods – namely peas, to which he is allergic -- and was forced "to eat contaminated food [or] give the peas to another inmate or discard them"; and that on certain occasions, unknown persons spit, defecated, or urinated in food that was being served to Mr. Robldeo-Valdez on the instructions of Mr. Fish. Mr. Robldeo-Valdez states that he lost 30 pounds during this time period due to insufficient meals.

He asserts the following claims[3]: (i) a claim brought pursuant to 42 U.S.C. § 1983 that the Defendants' failure to provide him with appropriate meals constitutes cruel and unusual punishment in violation of the 8th Amendment to the U.S. Constitution; (ii) a claim brought pursuant to § 1983 that the Defendants' failure to follow the diet prescribed for him by medical

---

[2] In light of Mr. Robledo-Valdez's *pro se* status, the Court construes his filings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

[3] In the interests of efficiency, the Court has collapsed two of Mr. Robledo-Valdez's claims, "negligence" against Mr. Fish and "attempted murder" against Defendants Lang, Swedferger, and Middleweek (arising from an instance in which Mr. Robldeo-Valdez was served food containing peas, that he complained, and that food service staff sent him back the same tray after attempting to hand-pick off the offending peas).

2

providers constitutes deliberate indifference to his medical needs in violation of the 8th and 14th Amendments.[4]

Each Defendant challenges Mr. Robldeo-Valdez's claims. The Food Service Defendants move **(# 49)** to dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(2) and (5), arguing that the Court lacks personal jurisdiction over them because Mr. Robldeo-Valdez has failed to adequately serve them with the Summons and Complaint. Mr. Fish, the Jail's staff member responsible for overseeing food service operations, moves **(# 55)** to dismiss the claims against him pursuant to Fed. R. Civ. P. 12(b)(1), arguing that Mr. Robledo-Valdez's only claim against him sounds in negligence and is therefore barred by the Colorado Governmental Immunity Act, C.R.S. § 24-10-101 *et seq.* Aramark, the company that provided food services at the Jail, moves for summary judgment **(#66)** arguing that: (i) Mr. Robldeo-Valdez failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a); (ii) Mr. Robldeo-Valdez cannot demonstrate any policy or custom of Aramark that caused his injuries, and thus, cannot establish Aramark's liability under a *Monell* theory; (iii) Mr. Robldeo-Valdez cannot show that any deprivation of meals he suffered was sufficiently serious to establish a constitutional violation; and (iv) Mr. Robledo-Valdez cannot show that Aramark was deliberately indifferent to his medical needs.

## ANALYSIS

**A. Failure to serve**

The Court begins with the Food Service Defendants' motion. Mr. Robldeo-Valdez commenced this action in the Colorado District Court for Jefferson County on or about June 16,

---

[4]   Mr. Robledo-Valdez was a pretrial detainee during a portion of the relevant time period, and thereafter, was a convicted defendant awaiting sentencing.

2017.  *Docket #* 1-2.  Aramark removed the action to this Court on August 22, 2017 **(# 1).**  At that time, it does not appear that Mr. Robledo-Valdez had completed service on any Food Service Defendant.

On or about October 4, 2017, Mr. Robledo-Valdez provided the U.S. Marshal with addresses for service of process on each Defendant, including the Food Service Defendants.  *Docket #* 11-1.  On October 31, 2017, the Marshal filed returns of service **(# 14)**, indicating that each of the Food Service Defendants had been personally served by the Marshal leaving the Summons and Complaint at the Jefferson County Sheriff's Office.  Thereafter, the Food Service Defendants moved **(# 19)** to quash the service upon them, stating that they are employees of Aramark and not Jefferson County, and that the Sheriff's Office was not authorized to accept process on their behalf.  On May 15, 2018, the Court granted **(# 21)** the Food Service Defendants' motion, quashing the service and dismissing Mr. Robledo-Valdez' claims against these Defendants for failure to effect service of process.[5]

On June 25, 2018, Mr. Robledo-Valdez filed a "Request For New Service" **(# 25)**, requesting that either: (i) the defendants waive service, or (ii) that the Marshal "attempt to serve the Aramark representative/designee authorized to accept service" at an Aramark office located in Morrison, Colorado.  It does not appear that the Food Service Defendants waived service, and on August 31, 2018, the Court granted **(# 36)** Mr. Robledo-Valdez's request to have the Marshal re-serve the Defendants at the Morrison, Colorado address of Aramark.  On September 12, 2018, the Marshal filed returns of service **(# 37)** indicating that the address provided by Mr. Robledo-

---

[5]  The Court noted that Mr. Robledo-Valdez could request, through their counsel, that the Food Service Defendants waive service pursuant to Fed. R. Civ. P. 4(d), but the Court stated that it expressed no opinion as to how Mr. Robledo-Valdez should proceed if such a request was declined.

Valdez "did not exist." The returns of service indicated that the Marshal had called Aramark's legal department and learned that Aramark had "no corporate office in Denver" and that Aramark's headquarters were located in Philadelphia, PA. More than a year passed without further effort by Mr. Robledo-Valdez to follow up on whether service had been accomplished.

On September 13, 2019, the Court issued an Order to Show Cause **(# 41)**. It noted that: (i) that Mr. Robledo-Valdez's claims against the Food Service Defendants had been pending for more than two years without service having been effected, (ii) that Mr. Robledo-Valdez had already made two ineffective attempts at service; and (iii) the Court was inclined to dismiss the claims against the Food Service Defendants pursuant to Fed. R. Civ. P. 4(m). The Court granted Mr. Robledo-Valdez 14 days to show cause why the claims against these Defendants should not be dismissed. Mr. Robldeo-Valdez responded, arguing: (i) the Marshal should have attempted to enter the Jail's kitchen area and served the defendants personally; (ii) the Marshal could have "waited outside or in the lobby and served the defendants as they arrived or left for work"; (iii) that Mr. Robledo-Valdez had experienced various garnishments and other economic setbacks that made it difficult for him to make phone calls or write letters in order to ascertain a better address at which to attempt service; (iv) that Mr. Robledo-Valdez "has obtained an address for Aramark in Denver" and also suggests that the Defendants could also be served at the Jail itself; and (v) that Mr. Robledo-Valdez "proposes that the Marshal contact the jail to see if any defendants still work there" and either attempt service there or at the Aramark office. Shortly thereafter, the Food Service Defendants filed the instant motion.

Fed. R. Civ. P. 4(m) provides that "if a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Such an extension may be granted upon a

5

showing by the plaintiff of "good cause for the failure." Although inmate plaintiffs proceeding *pro se* face particular challenges in ensuring effective service, the requirements of Rule 4(m) apply to them as well. *Staples v. U.S.*, 762 Fed.Appx. 525, 530 (10th Cir. 2019). Although an inmate may act in good faith and diligently attempt to locate an appropriate address for service, the inmate's inadvertence or simple negligence in failing to complete that task does not constitute good cause for repeated extensions of time, particularly where the case is reaching an advanced age. *See Murphy v. City of Tulsa*, 556 Fed.Appx. 664, 668 (10th Cir. 2014).

      Here, the Marshals made two attempts to serve the Food Service Defendants based on the information Mr. Robledo-Valdez provided, and neither attempt was successful. Mr. Robledo-Valdez's response to the Order to Show Cause provides no reason to believe that he is any closer to effecting service now than he was two years ago – he once again proposes serving the Defendants at the Jail itself (ignoring the fact that the Marshals might not have the ability to freely roam the halls of that facility looking for the Defendants) or at an address in Denver, notwithstanding the indication on the prior returns of service that Aramark has no corporate office in the Denver area. Given the length of time that this case has been pending (including delays of more than a year between September 2018 and September 2019, where it appears that Mr. Robledo-Valdez made no efforts to ascertain the status of his attempts at service upon these Defendants), Mr. Robledo-Valdez's failure to effectuate service on the Food Service Defendants despite two prior attempts, and the absence of any indication that Mr. Robledo-Valdez is currently in possession of an address at which the Defendants can be effectively served, the Court finds that no good cause exists to further extend the deadline for Mr. Robledo-Valdez to serve the Food Service Defendants. Accordingly, the Court grants their motion to dismiss and

dismisses Mr. Robldeo-Valdez's claims against them pursuant to Fed. R. Civ. P. 4(m) and 12(b)(2) and (5).

### B. Claims against Mr. Fish

In its May 15, 2018 Order **(# 21)**, the Court previously construed the claims in Mr. Robledo-Valdez's Amended Complaint to the extent they were asserted against Mr. Fish, concluding that Mr. Robledo-Valdez had failed to state any colorable constitutional claims against Mr. Fish. However, the Court found that Mr. Robledo-Valdez alleged that "Mr. Fish engaged in either intentional or negligent tortious conduct under Colorado common law" by failing to adequately supervise the Jail's food service staff, by failing to act when he learned that Mr. Robledo-Valdez was not being provided proper food, or by directing Aramark employees to spit, urinate, or defecate in Mr. Robledo-Valdez's food.[6]  Mr. Fish argues that because the only claims remaining against him sound in negligence, Mr. Robledo-Valdez's failure to comply with the requirements of the Colorado Governmental Immunity Act ("CGIA") deprive this Court of subject-matter jurisdiction to consider claims arising under Colorado law.

The CGIA provides certain pre-filing requirements that must be met before a plaintiff can assert state-law claims against government officials. Most notably, C.R.S. § 24-10-109(1) requires that "any person claiming to have suffered an injury by a public entity or by an

---

[6] The Court's analysis of Mr. Robledo-Valdez's constitutional claims against Mr. Fish did not specifically discuss the allegations that Mr. Fish told Aramark employees to contaminate Mr. Robledo-Valdez's food with bodily secretions. However, the Court notes that Mr. Robledo-Valdez's Amended Complaint states that Mr. Robledo-Valdez "ha[s] it on good authority that [Mr.] Fish . . order[ed] (or suggest[ed]) to Aramark Staff" to contaminate the food, but Mr. Robledo-Valdez goes on to acknowledge that "whether or not the Aramark [staff] actually obeyed his orders is debatable."  Mr. Robledo-Valdez does not specifically allege that he was ever served food contaminated by urine or feces, and he recites only two occasions in which he was served food that he believed was contaminated with saliva. Mr. Robledo-Valdez does not specifically allege that Mr. Fish specifically instigated or participated in those two instances.

7

employee thereof . . . shall file a written notice as provided in this section within 180 days after the date of the discovery of the injury." The notice is required to be filed with "the governing body of the public entity or the attorney representing the public entity." C.R.S. § 24-10-109(3)(a). The CGIA indicates that "compliance with the provisions of this section shall be a jurisdictional prerequisite to any action." C.R.S. § 24-10-109(1).

Here, Mr. Robledo-Valdez responds that he served such a notice, attaching[7] a Notice of Intent that he served "on the Attorney General of Colorado." *Docket* # 59 & 59-1. But Mr. Fish is an employee of Jefferson County, not an employee of the State of Colorado. Thus, C.R.S. § 24-10-109(3)(a) required that Mr. Robledo-Valdez serve his notice on the "governing body of" Jefferson County, presumably its Board of County Commissioners. Because Mr. Robledo-Valdez has not alleged that he served the required notice on the proper recipient, he has failed to demonstrate his compliance with the CGIA. And in the absence of compliance with the CGIA, Mr. Robledo-Valdez's remaining state-law claims against Mr. Fish must be dismissed for lack of subject-matter jurisdiction. Accordingly, Mr. Fish's motion is granted.

### C. Summary judgment motion by Aramark

Aramark raises several arguments in its motion for summary judgment, but the Court need only address one. Claims asserting violations of constitutional rights by state actors (or, here, persons acting in concert with the state) must be brought against the specific individuals personally engaging in the unconstitutional actions. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Obviously, Aramark – the corporate entity itself – did not personally

---

[7] Because Mr. Fish's motion raises issues of subject-matter jurisdiction, the Court may consider evidence attached by the parties without converting the motion to one for summary judgment. *See Los Alamos Study Group v. U.S. Dept. of Energy*, 692 F.3d 1057, 1063-64 (10th Cir. 2012).

serve Mr. Robledo-Valdez incorrect or contaminated food, and thus, Mr. Robledo-Valdez cannot maintain an action against Aramark under normal § 1983 principles. Nor can entities like Aramark be held vicariously liable for unconstitutional acts committed by their employees, as courts have made clear that no *respondeat superior* liability exists under § 1983. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691 (1978). In limited circumstances, an entity like Aramark can be said to have violated the constitution of its own accord upon a showing that it maintained an official corporate custom or policy that caused an employee to engage in an unconstitutional act. *Id.* at 692-95.

But as Aramark notes here, Mr. Robledo-Valdez has not alleged, much less come forward with evidence to establish, that Aramark maintained a corporate policy or custom directing employees to contaminate inmates' food. Mr. Robledo-Valdez's summary judgment response is clear that he is only relying on *respondeat superior* principles in asserting claims against Aramark.[8] *See Docket* # 70 at 2 ("Aramark under *respondeat superior* must cover the actions of its employees. . . Aramark, LLC can be sued for the actions and/or inactions of its employees.") Accordingly, because Mr. Robledo-Valdez has not come forward with evidence sufficient to

---

[8]   Mr. Robledo-Valdez makes a passing argument that "Aramark is directly responsible for its employee's training." In certain circumstances, an entity's failure to adequately train its employees to avoid unconstitutional acts can give rise to *Monell* liability, but a plaintiff making such a claim must show that the entity "had actual or constructive notice that its action or failure to act was substantially certain to result in a constitutional violation and consciously or deliberately chose to disregard that risk." *Murphy v. City of Tulsa*, 950 F.3d 641, 650-51 (10th Cir. 2019). But beyond the quoted text, Mr. Robledo-Valdez offers no evidence to demonstrate what training Aramark actually gave its employees, that there were specific defects in that training that were "substantially certain" to lead Aramark employees to act unconstitutionally, or that Aramark was aware of those defects and consciously disregarded them. In the absence of such evidence, Mr. Robledo-Valdez, as the party bearing the burden of proof on this claim, has not carried his burden of demonstrating a genuine issue of triable fact.

demonstrate a claim for *Monell*-style "custom or policy" liability for Aramark, Aramark is entitled to summary judgment on Mr. Robledo-Valdez's § 1983 claims.

### D. Remaining defendant

Mr. Robledo-Valdez's Amended Complaint also identifies and purports to assert claims against a Defendant named "Matthew." To date, Mr. Robledo-Valdez has not effectuated service upon this Defendant. There appearing to be no good cause for the failure to complete such service after more than three years, the Court dismisses without prejudice all claims against this Defendant.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Food Service Defendants' Motion to Dismiss **(# 49)**, and the claims against Defendants Lang, Middleweek, and Swedferger are **DISMSISED WITHOUT PREJUDICE** pursuant to Fed. R. Civ. P. 4(m) and 12(b)(2) and (5). Mr. Fish's Motion to Dismiss **(# 55)** is **GRANTED** and the claims against Mr. Fish are **DISMISSED** for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Aramark's Motion for Summary Judgment **(# 66)** is **GRANTED**, and the Clerk of the Court shall enter judgment in favor of Aramark on Mr. Robledo-Valdez's claims against it. The Court *sua sponte* **DISMISSES WITHOUT PREJUDICE** Mr. Robledo-Valdez's claims against Defendant Matthew pursuant to Fed. R. Civ. P. 4(m). Mr. Robledo-Valdez's Request for Proof of Service **(# 47)** and Mr. Fish's Motion for Leave to File a Dispositive Motion **(# 63)** are **DENIED AS MOOT** in light of the rulings herein. There being no remaining claims against any Defendant, the Clerk of the Court shall close this case.

Dated this 28th day of September, 2020.

BY THE COURT:

_/s/ Marcia S. Krieger_

Marcia S. Krieger
Senior United States District Judge